Argued and submitted March 6, decision of Court of Appeals reversed;
order of Workers' Compensation Board reversed, and case remanded to Workers'
Compensation Board for further proceedings August 13, 1998

In the Matter of the Compensation of
Allen Coman, Claimant.

Allen COMAN,
*Petitioner on Review,*

*v.*

CORRECTIONS DEPARTMENT
and SAIF Corporation,
*Respondents on Review.*

(WCB 95-12947; CA A95012; SC S44624)

960 P2d 383

Richard M. Walsh, Salem, argued the cause and filed the petition for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

GILLETTE, J.

** Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The issue in this workers' compensation case involving an occupational disease claim is whether petitioner, an employee of the Oregon Corrections Department (Department) who claimed that he had contracted tuberculosis (TB) while on the job, properly was denied access to certain medical records of prisoners in the custody of his employer. Petitioner asserts that those records may help him meet his burden of proof with respect to an occupational disease claim under ORS 656.266. An administrative law judge (ALJ) denied petitioner access to the records, a divided Workers' Compensation Board (Board) affirmed that ruling, and the Court of Appeals affirmed the order of the Board without opinion. *Coman v. Corrections Division*, 149 Or App 496, 942 P2d 304 (1997). We allowed petitioner's petition for review and now reverse the decision of the Court of Appeals.

Petitioner is employed as a correctional sergeant at the Oregon State Correctional Institution (OSCI). A September 1995 skin test indicated that he had been exposed to the organism that causes TB. Petitioner had tested negative for TB the previous year. He filed a workers' compensation claim, alleging that he had been exposed to at least one infectious case of TB while working at OSCI. (The record indicates that a person can contract TB only from another person who has an active case of the disease.) The workers' compensation insurance carrier for the Department investigated and determined that several staff members[1] and inmates at OSCI also had tested positive for TB in 1995. The carrier nonetheless concluded that there were no active TB cases at OSCI during 1995 and, therefore, denied the claim.

At a hearing before the ALJ, petitioner requested an order to compel the production of medical records of a certain prisoner whom petitioner believed to have had active TB while under petitioner's direct supervision at OSCI, together with the medical records of other inmates who had tested positive for TB in 1995. The Department responded that the medical records of inmates are confidential under Oregon

---

[1] Records of staff members are not at issue in the case before us.

statutory law and that, in any event, the Department had determined that the records that petitioner sought were irrelevant, because it had determined, based on those and other records, that there were no active cases of TB at OSCI.

Ultimately, the ALJ appears to have accepted the Department's oral assurances through counsel that the medical records would not help petitioner. The ALJ ruled:

> "At this point in time I'm not sure that—*unless you can show me that—that [counsel for the Department's] determination that there is no indication the cases are active and therefore nonactive cases can't transmit that that his decision that these were irrelevant is inappropriate.* If you can show me that, then perhaps we can do some kind of an in-camera or—or something of that nature to determine. But at this point in time, I'm not willing to say they need to turn everything over to you. That may be developed by further testimony from the medical staff or from [a medical witness on behalf of petitioner]."

(Emphasis added.)

As the foregoing makes clear, the ALJ's ruling was confined to the issue of relevancy; she did not attempt to determine whether, or how, she might deal with issues surrounding the confidentiality of any records that she otherwise might determine to be discoverable. Without the records or other evidence corroborating his theory that he had contracted TB at OSCI, the ALJ held that petitioner's claim failed for lack of proof. As noted, a divided Workers' Compensation Board affirmed, and the Court of Appeals affirmed that ruling.

On review before this court, the Department does not attempt to defend the ALJ's decision on relevancy grounds. Instead, it focuses entirely on an alternative argument that it had made to the ALJ, *viz.*, the confidentiality of the records that petitioner sought.

■ That is the appropriate inquiry. The record establishes that the records that petitioner sought were relevant: Other persons at the prison had tested positive for TB for the first time during the same period in which petitioner tested

positive for the first time; at least one inmate had been transferred to another institution after testing positive for TB—the standard way in which active cases of the disease were handled by the Department; and the Department and its insurance carrier had used the very records that petitioner sought to make their own determination whether there were active cases of TB at the prison, thereby demonstrating that they regarded those records as relevant to that inquiry. It follows that, absent some legal barrier to their disclosure, the ALJ erred in failing to order that the records be turned over in some form to petitioner as discoverable material.[2]

■  We believe that the following summary accurately describe's the Department's position in this case: (1) By statute, the records that petitioner sought were confidential; (2) because the records were confidential, the Department would have declined to produce them, even had the ALJ ordered their production; and (3) because the ALJ could not have allowed petitioner to have access to the records, she could not have committed reversible error in declining to order production of those records in the first place.

It is true, as the Department argues, that it is required to keep the medical records of inmates confidential. ORS 179.495 provides, in part:

"(1)  Medical case histories, clinical records, X-rays, treatment charts, progress reports and other similar written accounts of the inmates of any Department of Corrections institution * * *, maintained in such institution by the officers or employees thereof who are authorized to maintain such histories, records, X-rays, charts, reports and other accounts within the official scope of their duties, shall not be subject to inspection except upon * * * *order of a court of competent jurisdiction*. The restriction contained in this section shall not apply to inspection or release of written accounts made * * * with the consent of the individual

---

[2] The materials at issue are crucial to petitioner's case, and the Department does not argue that, if the Department's confidentiality argument is incorrect, then the ALJ nonetheless retained discretion to deny discovery. We thus are not faced with a case in which it is argued that relevant material should not be disclosed, because the party seeking the material has not shown a need for it sufficient to overcome policy reasons that favor nondisclosure.

concerned, or in case of the incompetence of the inmate, by the legal guardian of the inmate."

(Emphasis added.) "Inspection," the Department argues, is a term of common usage and should be given its "plain, natural, and ordinary meaning." *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (prescribing that standard for construing words of common meaning in statutes). The word "inspect" means to look at or examine closely. *Webster's Third New Int'l Dictionary*, 1170 (unabridged ed 1993). Thus, the Department reasons, it may not be required to disclose inmates' medical records—period.

That premise is mistaken. As the emphasized wording shows, the statutory prohibition is not absolute. The statute declares that inspection of such records may be directed "upon order of a court of competent jurisdiction." The question thus arises: Is there a way in which a court of competent jurisdiction might issue such an order? There is.

An ALJ has statutory authority to administer oaths, ORS 656.724(4); ORS 656.726(2)(b), and to "[i]ssue * * * subpoenas for the attendance of witnesses and the production of papers, contracts, books, accounts, documents and testimony." ORS 656.724(4); 656.726(2)(c). If any such subpoena is disobeyed—as the Department posits that it would have disobeyed a subpoena for the medical records at issue in this case—then the ALJ may apply to a circuit court for enforcement of the subpoena. ORS 656.732.[3] An order of a circuit court, issued pursuant to the procedure contemplated by ORS 656.732, would satisfy the requirement in ORS 179.495 of "an order of a court of competent jurisdiction."

---

[3] ORS 656.732 provides:

"The circuit court for any county, or the judge of such court, on application of * * * [an] Administrative Law Judge * * *, shall compel obedience to subpoenas issued and served pursuant to ORS 656.726 and shall punish disobedience of any such subpoena or any refusal to testify at any authorized session or hearing or to answer any lawful inquiry of the * * * Administrative Law Judge[ ] * * *, in the same manner as a refusal to testify in the circuit court or the disobedience of the requirements of a subpoena issued from the court is punished."

The foregoing discussion deals with all three parts of the Department's argument: (1) The records are not absolutely undiscoverable; (2) there is a method by which an ALJ's order to produce the records for inspection could be enforced by a court of competent jurisdiction; and, therefore, (3) the ALJ would have been in error, had she declined to order their disclosure in these circumstances.

Because the Department's confidentiality argument fails, we are left with the ALJ's relevancy ruling. As we have indicated, that ruling was erroneous. Petitioner was prejudiced, because he was unable to produce corroborating evidence (in addition to his own testimony and the surrounding circumstances) to show that he had contracted TB on the job, and his failure to do so was the basis on which his claim was denied on the merits. Petitioner is entitled to some form of disclosure of the medical records at issue and, if those records contain any evidence supporting his claim, to a new hearing at which that evidence can be introduced.

We have held that the records in question are relevant and discoverable and that there is a legally efficacious way in which the ALJ could order, and the Department could be required to provide, those records. The foregoing conclusion requires that the case be remanded to the Board with instructions to remand the case to the ALJ to grant discovery of the requested medical records under such circumstances as the ALJ shall find to be appropriate.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed. The case is remanded to the Workers' Compensation Board for further proceedings.